IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABC INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-1579 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| GD GROUP USA COMPANY d/b/a GD MEDICAL INC., and YONG ZHANG, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

ABC International, Inc. brings this diversity action against GD Medical Inc., and Yong Zhang alleging a breach of contract. Before the Court is GD Medical's motion to dismiss [32] Plaintiff's first amended complaint, joined by Defendant Zhang [35]. For the reasons below, Defendants' motions [32, 35] are denied. Defendant Zhang's motion to join Defendant GD Medical's amended reply [40] is granted. Counsel are directed to file a joint status report no later than October 15, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

**I.     Background**[1]

Plaintiff ABC International is an Ohio corporation. [30 at ¶1.] Defendant GD Medical is an Illinois corporation, and Defendant Yong Zhang, an individual, is an Illinois resident. [*Id.* at ¶¶

---

[1] For purposes of Defendant's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the complaint [30] and draws all reasonable inference in Plaintiff's favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

2–3.] This action arises from ABC's attempt to purchase a large shipment of surgical face masks from GD Medical in February 2020.

The Complaint states that on February 3, 2020, Eddie Ni, president of ABC, negotiated with Yong Zhang of GD Medical[2] to buy 215,400 surgical masks from GD Medical for $96,930. [*Id.* at ¶ 6.] ABC wired the full amount to GD Medical [*id.* at ¶ 13], and on February 5, 2020, GD Medical delivered the entire quantity of masks to ABC's shipping agent in Los Angeles, California. [*Id.* at ¶ 16.] ABC planned to sell the masks to a customer in China, so the company's shipping agent stored the masks in California and awaited further instruction from ABC. [*Id.* at ¶¶ 17–18.] The following day, February 6, 2020, ABC executed an agreement with a Chinese company, Fujian Zhangzhou Foreign Trade Company ("Fujian"), to sell all 215,400 masks to Fujian for a total price of $312,330. [*Id.* at ¶¶ 19–20.] Fujian wired $132,000 to ABC the same day as a deposit for the masks, and ABC agreed to ship the masks to Fujian no later than February 12, 2020. [*Id.* at ¶¶ 21–22.]

ABC never shipped the masks to Fujian, however, because sometime during the night of February 6, 2020, Zhang instructed its shipper to retake possession of the masks from ABC. [*Id.* at ¶ 23.] GD Medical's shipper told ABC's California shipping agent that GD Medical had delivered the wrong product to ABC and therefore had instructed its shipper to retrieve the masks. [*Id.* at ¶ 24.] Once Ni learned that ABC no longer had possession of the masks, he contacted Zhang, who told Ni that GD Medical had to recall the masks due to a defect in the product. [*Id.* at ¶ 26.] GD Medical refunded ABC the $96,930 purchase price, but ABC lost its sale to Fujian. [*Id.* at ¶¶ 30–31.] Fujian subsequently terminated all of its business with ABC. [*Id.* at ¶ 32.]

---

[2] It is not clear from the complaint what position Zhang holds with GD Medical. It is undisputed, however, that Zhang had authority to negotiate sales contracts on GD's behalf.

ABC filed this action against GD Medical and Zhang on March 4, 2020, pursuant to diversity jurisdiction. [1; 30 at ¶ 4.] The complaint alleges five counts: breach of contract (Count 1) and conversion (Count 2) against GD Medical; and breach of contract (Count 3), conversion (Count 4), and fraud (Count 5) against Zhang. Defendants move collectively to dismiss all counts for failure to state a claim upon which relief could be granted. [32; 35.]

II.     **Legal Standard**

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

III.    **Analysis**

Defendants argue in the instant motion that Plaintiff fails to state a claim against them for breach of contract. In Defendants' view, the parties mutually agreed to rescind the contract, thus

cancelling the parties' original obligations under the contract. Defendants further contend that without a breach of contract claim, all of Plaintiff's other claims must also fail. Because the action is based in diversity, Illinois substantive law governs. See *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

As an initial matter, the Court notes that Defendants attached several exhibits to its motion to dismiss [32-1] that are not properly before the Court. In general, when deciding a motion to dismiss, the Court "may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Seventh Circuit has included within these categories "[d]ocuments that a defendant attaches to a motion to dismiss," which "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). "Documents that fall within this 'narrow' exception must be 'concededly authentic.'" *Hostway Corp. v. JPMorgan Chase Bank, N.A.*, 2009 WL 2601359, at *5 (N.D. Ill. Aug. 24, 2009) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

Among the exhibits filed in support of their motion to dismiss, Defendants have attached instructions for wire transfers and confirmation of the payments from ABC to GD and later from GD to ABC [see 32-1 at 2, 7, 11, 26, 30], a declaration by GD's general manager [*id.* at 4], photographs of a text message exchange [*id.* at 13, 28], a declaration by Defendant Zhang [*id.* at 15], a document that appears to be a news story released on February 2, 2020 [*id.* at 19], ABC's sales contract with Fujian [*id.* at 32], and another document written entirely in Chinese with a

4

photograph of a man lifting boxes [*id.* at 22]. None of these documents is attached to the complaint, central to the complaint, referred to in the complaint, subject to judicial notice, or "concededly authentic." See *Tierne*, 304 F.3d at 738. Thus, the Court cannot consider these documents in its ruling, as doing so would require that the motion to dismiss be treated as a motion for summary judgment, see Fed. R. Civ. P. 12(d), which the Court declines to do here. Defendants obviously are free to produce these materials in discovery, subject them to testing through the adversary process, and use them in support of a motion for summary judgment later in the case.

Turning to the substance of the instant motion, Defendants argue that the parties' conduct demonstrates that they mutually agreed to terminate the contract for the sale of the surgical masks. Specifically, Defendants contend that "[i]t is not plausible that Mr. Ni's provision of ABC's wiring instructions to Mr. Zhang, and ABC's acceptance and retention of the full refund from GD Medical's account, were pursuant to anything other than a mutual rescission of the alleged mask sale." [32 at 5.] But accepting this argument turns on its head the rule that on a motion to dismiss the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in Plaintiff's favor. Applying that rule, the Court cannot determine at this stage in the litigation that the parties mutually rescinded their original purchase agreement.[3]

Under Illinois law, "contracts—even fully executed ones—can be cancelled or rescinded by mutual consent of the parties or judicial decree." *Chicago Limousine Serv., Inc. v. Hartigan Cadillac, Inc.*, 563 N.E.2d 797, 802 (Ill. 1990) (citations omitted). An agreement between parties to mutually rescind a contract may be express or implied, see *Kirchhoff v. Rosen*, 592 N.E.2d 371, 375–76 (Ill. App. 1992), but if implied, "the circumstances or conduct relied on must be positive,

---

[3] Although the parties' agreement constitutes a "sale" under the UCC and is therefore governed by the UCC as implemented in 810 ILCS 5/201 *et seq.*, Illinois courts have interpreted mutual rescission as coexisting with the UCC. See *Chicago Limousine Serv., Inc.*, 563 N.E.2d 797, 803 (Ill. 1990) ("[W]e do not believe the UCC has preempted or abolished 'mutual rescission.'").

unequivocal and inconsistent with the existence of a contract to warrant a finding of abandonment." *Sohaey v. Van Cura*, 607 N.E.2d 253, 266 (Ill. App. 1992); see also *Bocchetta v. McCourt*, 450 N.E.2d 907, 910 (Ill. App. 1983).

The facts alleged in the complaint do not conclusively prove Defendants' theory of the case. The complaint establishes—and Defendants do not dispute—that Plaintiff sent payment for the masks to GD Medical [see 30 at ¶ 13]; GD Medical then delivered the masks to Plaintiff's California shipping agent [*id.* at ¶ 16]; and GD Medical (or Zhang on GD Medical's behalf), retook the masks from ABC's shipping agent [*id.* at ¶¶ 23–24]. There is no dispute that based on the original terms of the sale, the parties did not intend for the masks for which ABC paid to ultimately remain in Defendants' possession. Indeed, ABC was refunded the money paid for the masks, but that fact alone, without more, is not sufficient "uncontradicted evidence of an effective agreement to rescind the contract of sale." *Volk v. Kendall*, 389 N.E.2d 697, 699 (Ill. App. 1979). The Court has no information as to, for example, whether ABC demanded that the masks be redelivered, or whether the parties attempted to negotiate a new arrangement, or what Ni and Zhang said to each other once Ni learned that the masks were no longer at ABC's shipping facility. *Cf. id.* (noting that Kendall "actually offered" the truck to the Volks, "the Volks did accept and take possession of the truck, without expressing any conditions," and "the Volks made payments on the bank loan and they sold the truck on their own responsibility and without consulting Kendall," thus the "uncontradicted evidence as to the conduct of the parties" demonstrated their mutual agreement to rescind the contract). "Cancellation * * * by mutual consent contemplates more than mere communication of intent by one party to the other. Rather, mutual consent requires an agreement * * * that both parties are to be excused from the * * * contract." *Copely v. Pekin Ins. Co.*, 488 N.E.2d 1004, 1009 (Ill. 1986).

6

Nor does the complaint establish whether ABC intended, along with GD Medical, to be excused from the contract, or whether ABC merely acquiesced in accepting the refund after GD Medical's breach. See RESTATEMENT (SECOND) OF CONTRACTS § 283 (1981) ("Mere failure to object to a repudiation, however, is not a manifestation of assent to an agreement of rescission."); 13 CORBIN ON CONTRACTS § 67.8 ("Regrettably, the term 'rescission' has been applied to those occurrences where one party repudiates the contract or otherwise commits a material breach and the other acquiesces or acknowledges the breach. Although the injured party is in fact discharged from further duty under the contract by the other party's breach, this is neither a 'rescission' nor an offer to rescind."). Plaintiff suspects that "Defendants sold the retrieved masks to another buyer at a higher price" [37 at 2]—not an implausible theory given the dynamic market for masks in February 2020 as the pandemic began spreading from China to other parts of the world. Under Defendants' reading of the law, Plaintiff was supposed to endure the retrieval of the product they had purchased and agreed to resell for a profit *and* refuse to accept the refund of the funds advanced for a product that was not delivered. It is far too early in the case, and the record far too underdeveloped, for the Court to accept as gospel either side's version of events, much less determine the legal (and perhaps equitable) consequences of those events.

Defendants' argument that the parties mutually agreed to terminate the contract thus fails. To state a claim for breach of contract, Plaintiff must allege four elements: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 970 (Ill. 2004). The complaint alleges that (1) Plaintiff negotiated with Defendants to purchase the masks; (2) Plaintiff sent the agreed upon price to the Defendants; (3) Defendants

delivered but ultimately retook possession of the masks; and (4) Plaintiff was unable to use the masks as intended as a result. Plaintiff has stated a claim for breach of contract.

Defendants propose mutual rescission as the sole ground for dismissing Plaintiff's breach-of-contract claims, and do not directly address Plaintiff's other claims other than to assert that the remaining three claims turn on its breach-of-contract claims, and therefore fail due to mutual rescission. Because the Court rejects Defendants' mutual rescission argument and finds Plaintiff has alleged sufficient facts to state a claim for breach of contract, the Court declines to dismiss any of Plaintiff's other claims.

## IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss [32, 35] are denied. Defendant Zhang's motion to join Defendant GD Medical's amended reply [40] is granted. Counsel are directed to file a joint status report no later than October 15, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

Dated: September 29, 2021

Robert M. Dow, Jr.
United States District Judge