IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ABC INTERNATIONAL, INC., an Ohio corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01579 |
| GD GROUP USA COMPANY, doing business as GD MEDICAL INC., an Illinois corporation, and YONG ZHANG, individually, | ) ) ) ) ) | Honorable Judge Robert M. Dow, Jr.  Magistrate Judge Gabriel A. Fuentes |
| Defendants. | ) ) ) | JURY DEMANDED |
| _____ | ) ) | |
| GD GROUP USA COMPANY, doing business as GD MEDICAL INC., an Illinois corporation, | ) ) ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| ABC INTERNATIONAL, INC. an Ohio corporation, and EDDIE NI, individually, | ) ) ) | |
| Counter-Defendants. | ) | |

**DEFENDANT GD GROUP USA COMPANY'S ANSWER,
AFFIRMATIVE MATTER, AND COUNTERCLAIMS IN
RESPONSE TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant GD GROUP USA COMPANY, doing business and sued as GD MEDICAL

INC. ("GD Medical"), by its attorney, Gregg Minkow of Minkow & Bergman, LLC, states as

follows in response to the Amended Complaint filed herein by the Plaintiff, ABC

INTERNATIONAL, INC. ("ABC" or "Plaintiff"):

**ANSWER**

GD Medical answers as follows the allegations of the numbered paragraphs of the

Complaint, in the alternative of the Affirmative Matters pled hereinafter:

1

## PARTIES, JURISDICTION & VENUE

1.      ABC is a corporation incorporated in the state of Ohio with its principal place of business in Cleveland, Ohio.

ANSWER:  Admitted.

2.      GD Medical is a corporation incorporated in the state of Illinois with its principal place of business in Bartlett, Illinois.

ANSWER:  Admitted.

3.      On information and belief, Yong Zhang is an Illinois resident living in South Barrington, Illinois.

ANSWER:  Admitted.

4.      This Court has subject matter of this case pursuant to 28 U.S.C. § 1332(a), as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

ANSWER:  Admitted.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1), as the defendants reside in this district.

ANSWER:  Admitted.

## GENERAL ALLEGATIONS

6.      ABC's President, Eddie Ni, negotiated an agreement with Yong Zhang for the sale to ABC of 215,400 pieces of VetOne surgical face Masks ("Masks") on or about February 3, 2020, for a total price of $96,930.00, as detailed on the invoice attached hereto as Exhibit 1 (hereinafter referred to as the "Agreement").

ANSWER:  Denied.

7.      Zhang told Ni that he was an owner and officer of GD Medical and that GD Medical would supply the Masks to ABC.

ANSWER:  Denied.

8.      Zhang represented to Ni that he had authority from GD Medical to enter the Agreement with ABC.

ANSWER:  Denied.

9.      Based on Zhang's representations, Ni believed he was dealing with an authorized representative of GD Medical when he entered the Agreement.

ANSWER:  Denied.

10.     On information and belief, Zhang is the son of the owners of GD Medical.

ANSWER:  Admitted, but stated further, the substance of the allegations of this paragraph of the Amended Complaint has no relevance to this lawsuit or the claims therein, and should be held inadmissible at trial.

11.     On information and belief, Zhang is also a member of an LLC that owns the industrial property where GD Medical is domiciled.

ANSWER:  Denied, but stated further, the substance of the allegations of this paragraph of the Amended Complaint has no relevance to this lawsuit or the claims therein, and should be held inadmissible at trial.

12.     On information and belief, Zhang has worked for GD Medical and may still work for GD Medical.

ANSWER:  Admitted that Zhang was employed by GD Medical at one time, denied that he was employed by GD Medical at the time of the events alleged in the Amended Complaint, admitted that on occasion since those events Zhang has occasionally referred business to GD

Medical as an independent contractor, but stated further, the substance of the allegations of this paragraph of the Amended Complaint has no relevance to this lawsuit or the claims therein, and should be held inadmissible at trial.

13.     ABC wired $96,930.00 to GD Medical and fully performed its obligation under the contract.

ANSWER:  Admitted that ABC wired $96,930.00 to GD Medical, denied that GD Medical or Zhang entered into any contract with ABC, denied that ABC performed its obligations under any contract if it is found that a contract was formed, and stated, further, the $96,930.00 was returned to ABC at its request and through facilitation that only ABC could provide.

14.     GD Medical held ABC's payment in its bank account.

ANSWER:  Admitted that GD Medical held ABC's payment in its bank account from February 4, 2020 thru February 7, 2020 (the day it wired the funds back to ABC using wire instructions ABC provided).  The allegations of this paragraph of the Amended Complaint are otherwise denied.  Stated, further, GD Medical held the funds solely as an accommodation to ABC, which acknowledged it was dealing with Zhang but requested the security of having funds destined for Zhang held by a corporation.  GD Medical wired the funds back to ABC upon being informed that any arrangement between Zhang and ABC had been rescinded.

15.     By accepting the payment, GD Medical acknowledged that Zhang had both express and apparent authority to enter the Agreement on GD Medical's behalf and was acting as GD Medical's agent.

ANSWER:  Denied.  Stated further, see Answer to ¶ 14 of the Amended Complaint, above.

16.     On February 5, 2020, GD Medical delivered 215,400 Masks to ABC's shipping agent at Los Angeles, California. A copy of the shipping document (packinglist) is attached hereto as Exhibit 2.

ANSWER:  Denied.  Stated, further, Exhibit 2 specifies a delivery location in Ohio, not California, and not China.

17.     The masks were to be shipped from Los Angeles to China.

ANSWER:  Denied.

18.     ABC's shipping agent accepted the Masks tendered by GD Medical to ABC and stored the Masks pending further delivery to ABC's customer in China.

ANSWER:  Denied.  Stated, further, GD Medical did not deliver any masks to ABC, at any time, and does not know the identity of its alleged shipping agent.

19.     On February 6, 2020, ABC executed a sales contract (" Fujian Contract") with Fujian Zhangzhou Foreign Trade Co., Ltd. ("Fujian") to resell the Masks to Fujian.

ANSWER:  Denied.

20.     The Fujian Contract provided ABC would sell the 215,400 VetOne Surgical face Masks to Fujian for a total price of $312,330.00.

ANSWER:  Denied, in part because there was no Fujian Contract, and in part because the repeated use of the phrase "the Masks" as an underlying premise for the allegations of various paragraphs of the Amended Complaint presumes, inaccurately, that GD Medical (or even Zhang) delivered masks of any kind to anyone for ABC's benefit at any time.

21.     On February 6, 2020, Fujian wired $132,000.00 to ABC as a deposit for the Masks.

ANSWER:  Denied.

22.     The Fujian Contract specifically provided ABC shall ship the Masks to Fujian no later than February 12, 2020.

ANSWER:  Denied, in part because there was no Fujian Contract.

23.     During the nighttime of February 6, 2020, Zhang instructed the shipper to return to where the Masks were dropped off and retake possession of the Masks that belonged to ABC without ABC's approval.

ANSWER:  Denied.

24.     The shipper told ABC's shipping agent that the wrong products were delivered and that he had to retrieve them. Consequently, the shipper picked up the Masks and removed them from the possession of ABC's shipping agent.

ANSWER:  GD Medical lacks knowledge or information sufficient to form a belief about the truth of the allegation that some shipper retrieved some products (masks or otherwise) from some shipping agent of ABC, but denied that any masks from Zhang or GD Medical could have been the subject of any such event.  Consequently, in the context the allegations of this paragraph of the Amended Complaint are apparently intended, the paragraph is denied in its entirety.

25.     On information and belief, the shipper did not deliver the wrong masks to ABC.

ANSWER:  Denied, in part because there were no masks from GD Medical to have been delivered rightly or wrongly to ABC.

26.     When ABC's president learned that the shipper had retrieved the Masks, he immediately contacted Zhang and Zhang claimed that the Masks were defective and needed to be recalled.

ANSWER:  Denied.

27.    Upon information and belief, the masks were not defective.

ANSWER:  Denied, in part because there were no masks from GD Medical to have been delivered defectively or otherwise to ABC.

28.    Upon information and belief, Zhang sold the Masks to another buyer at a higher price.

ANSWER:  Denied.

29.    In the alternative, on information and belief, GD Medical sold the Masks to another buyer at a higher price.

ANSWER:  Denied.

30.    GD Medical subsequently returned the $96,930.00 funds to ABC that ABC had wired it.

ANSWER:  Admitted that GD Medical returned the $96,930.00 funds to ABC that ABC had wired it, as stated in the Answer to ¶ 14 of the Amended Complaint, above, but denied that the return occurred subsequent to events as described in the immediately preceding paragraphs since those events did not occur.

31.    ABC lost the sale of the Masks to Fujian.

ANSWER:  GD Medical lacks knowledge or information sufficient to form a belief about the truth of the allegation that ABC lost some sale of masks to Fujian, as GD Medical has no knowledge of ABC's business dealings, but denied that any masks from GD Medical (or even from Zhang) were the subject of any sale to ABC or any intended resale to Fujian, or (consequently) that any sale or resale of any such masks could have been lost.

32.    The sale of the Masks to Fujian was part of a larger master contract with

Fujian whereby Fujian would purchase additional Masks from ABC. Because ABC failed to supply the Masks for which Fujian had contracted, Fujian canceled its mastercontract with ABC.

ANSWER: Denied, in part because there were no masks from GD Medical (or even from Zhang) that could have been part of the alleged contract between ABC and Fujian.

## COUNT I – BREACH OF CONTRACT AGAINST GD MEDICAL

33. Plaintiff incorporates paragraphs 1-27, 29-32 as if pled in this Count.

ANSWER: GD Medical incorporates here by reference its Answers to ¶¶ 1-27 and 29-32 of the Amended Complaint, above.

34. GD Medical was, at all relevant times, a "merchant" of these Masks as that term is used in the Illinois Uniform Commercial Code (UCC), Sales, 810 ILCS 5/2-101 *et seq*.

ANSWER: Denied.

35. On information and belief, Zhang had express authority to enter a contract with ABC.

ANSWER: Denied that Zhang had express authority to enter a contract with ABC on GD Medical's behalf. Since Zhang was not then employed by GD Medical, GD Medical lacks knowledge or information sufficient to form a belief as to whether Zhang had authority to enter contracts with ABC for some entity other than GD Medical, but GD Medical is not aware of any such contracts or authority.

36. Zhang, as agent for GD Medical, entered the Agreement with ABC on February 3, 2020.

ANSWER: Denied, and stated, further, there was no "*the* contract" to enter into on any date.

37.     Under the Agreement, Zhang, as agent for GD Medical, agreed to sell to ABC 215,400 VetOne surgical face Masks for a total price of $96,930.00. *See* Exhibit 1.

ANSWER:  Denied.  Stated, further, Exhibit 1 appears to be the invoice that GD Medical created at ABC President Eddie Ni's request so that a corporation would be holding the funds he was transferring pursuant to the arrangement he made with Zhang independently of GD Medical to pay the out-of-pocket cost of 215,400 masks Zhang thought he could obtain at 45¢ per mask after Zhang conducted research on sources other than GD Medical.

38.     ABC fully performed its obligation under the contract by wiring $96,930.00 to GD Medical's bank account.

ANSWER:  Denied.  Further stated, there was no contract, and GD Medical incorporates here by this reference ¶¶ 12-14 of its Affirmative Matter, below.

39.     Zhang, as agent of GD Medical, had Masks delivered to ABC's shipping point on February 5, 2020, as required under the Agreement, but then retrieved the Masks on false pretenses one day later. To date, neither Zhang nor GD Medical have redelivered any Masks to replace those that were retrieved.

ANSWER:  Denied, except admitted that GD Medical (and to the best of its knowledge, Zhang) have never delivered any masks to ABC or for its benefit at any time, Zhang having rescinded any arrangements with ABC, and having directed GD Medical to return ABC's money, before any masks were either procured from suppliers or delivered, due to Ni's revelation that ABC was not honoring its promise to give any masks charitably to Chinese residents, and that ABC was planning to use unlawful payments to procure a resale in China.

40.     Zhang, as agent of GD Medical, breached the Agreement by instructing that the shipper remove the Masks from ABC's shipping agent on February 6, 2020, and by not redelivering replacement Masks.

ANSWER:  Denied.

41.     ABC suffered damages because of GD Medical's breach. Specifically, ABC was unable to fulfill the Fujian Contract to supply these Masks to Fujian.

ANSWER:  Denied.

42.     In addition, ABC lost the master contract with Fujian because it was unable to supply the initial shipment of Masks.

ANSWER:  Denied, in part because there were no "Masks" promised by either GD Medical or, to the best of its knowledge, by Zhang.  Stated further, even if masks had been delivered as alleged, ABC knowingly and purposely took back payment of the full purchase price for potentially available masks it had been discussing with Zhang, a full 5 days before any delivery to Fujian was allegedly due, and took no mitigating steps during that time to try to recover the masks it alleges had just been taken back by a shipper and presumably was still in his or his principal's possession. Thus, ABC abandoned any alleged contract or claim to the alleged masks before performance for Fujian was even due, and caused its own alleged loss of the alleged Fujian relationship.  Stated further, because GD Medical knows nothing about ABC's business, it lacks knowledge or information sufficient to form a belief as to what ABC promised Fujian or any other customer, including whether ABC promised to deliver goods it had no right to promise, and how its customers may have reacted when deliveries did not materialize through ABC's own fault.

43.     ABC suffered damages and is entitled to all damages provided by the UCC, including lost profits it would have earned from resale of the Masks and all incidental and consequential damages, pursuant to the U.C.C., 815 ILCS § 2-713(2) and2-715(2).

ANSWER:  Denied.

## COUNT II – CONVERSION AGAINST GD MEDICAL

44.     Plaintiff incorporates paragraphs 1-27, 29-32 as if pled in this Count.

ANSWER:  GD Medical incorporates here by reference its Answers to ¶¶ 1-27 and 29-32 of the Amended Complaint, above.

45.     On information and belief, Zhang had express authority to act on GD Medical's behalf.

ANSWER:  Denied.

46.     Once the Masks were delivered to ABC's shipping agent, ABC had title, custody, and control of the Masks.

ANSWER:  Denied, in part because there were no "*the* Masks" (i.e., from GD Medical or, to the best of its knowledge, from Zhang) delivered to any shipping agent of ABC.

47.     ABC had paid for and accepted delivery of the Masks and had a complete right to the Masks. ABC had an absolute and unconditional right to the immediate possession of the Masks.

ANSWER:  Denied, in part because there were no "*the* Masks" (i.e., from GD Medical or, to the best of its knowledge, from Zhang) delivered to anyone at any time for ABC's benefit, and in part, also, because ABC sought, enabled, and received a refund of the full purchase price it had advanced for potentially available masks it was discussing with

Zhang, and therefore had no rights whatsoever to any masks that it alleges were delivered.

48.     On information and belief, Zhang, as agent of GD Medical, instructed the shipper to retake custody of the Masks based on the false representations that the Masks were delivered to the wrong party and then that the Masks were defective. Retaking custody of the Masks through false representations was unauthorized and unlawful.

ANSWER:  Denied.  Stated further, there were no Masks to be retaken, and no false representations by GD Medical or Zhang.

49.     On information and belief, Zhang, as agent for GD Medical, without authorization from ABC wrongfully assumed control of ABC's property and wrongfully deprived ABC possession of its property.

ANSWER:  Denied.

50.     ABC contacted Zhang, as agent for GD Medical, and demanded immediate return of the Masks.

ANSWER:  Denied.

51.     Zhang, as agent for GD Medical, admitted he had retaken possession of the Masks, but falsely claimed that the Masks were defective and refused to return theMasks.

ANSWER:  Denied.

52.     Upon information and belief, Zhang as agent for GD Medical, sold the Masks to a different company at a higher price.

ANSWER:  Denied.

### COUNT III – BREACH OF CONTRACT AGAINST YONG ZHANG
### (PLED IN THE ALTERNATIVE)

53.     Plaintiff incorporates paragraphs 1-28, 30-32 as if pled in this Count. GD Medical has asserted that Zhang was not employed by or acting on behalf of GD Medical.

Accordingly, Count III is pled in the alternative to Counts I and II, if it is determined that Zhang was not acting as agent for GD Medical in the transaction at issue.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

54. Zhang, at all relevant times, was a "merchant" of these Masks as that termis used in the Illinois Uniform Commercial Code (UCC), Sales, 810 ILCS 5/2-101 *et seq*.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

55. ABC and Zhang entered a valid contract on February 3, 2020 ("Zhang Agreement").

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

56. Under the Zhang Agreement, Zhang agreed to sell to ABC 215,400 VetOne surgical face Masks for a total price of $96,930.00. *See* Exhibit 1.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

57. ABC fully performed its obligation under the Zhang Agreement by wiring $96,300.00 to GD Medical's bank account at Zhang's instruction.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

58. Zhang had Masks delivered to ABC's shipping point on February 5, 2020, as required under the agreement, but then retrieved the Masks on false pretenses one day later. To date, Zhang has not redelivered any Masks to replace those that were retrieved.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

59.    Zhang breached the Zhang Agreement by removing the Masks from ABC's shipping agent on February 6, 2020, and by not redelivering replacement Masks.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

60.    ABC suffered damages because of Zhang's breach. Specifically, ABC was unable to fulfill the Fujian Contract, to supply these Masks to Fujian.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

61.    In addition, ABC lost the master contract with Fujian because it was unable to supply the initial shipment of masks.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

62.    ABC suffered damages and is entitled to all damages provided by the UCC, including lost profits it would have earned from resale of the Masks, pursuant to the U.C.C., 815 ILCS § 2-713(2)  and 2-715(2).

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

<u>**COUNT IV – CONVERSION AGAINST YONG ZHANG**</u>
<u>**(PLED IN THE ALTERNATIVE)**</u>

63.    Plaintiff incorporates paragraphs 1-28, 30-32 as if pled in this Count. GD Medical has asserted that Zhang was not employed by or acting on behalf of GD Medical. Accordingly, Count IV is pled in the alternative to Counts I and II, if it is determined that

Zhang was not acting as agent for GD Medical in the transaction at issue.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

64. Once the Masks were delivered to ABC's shipping agent, ABC had title, custody, and control of the Masks.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

65. ABC had paid for and accepted delivery of the Masks and had a complete right to the Masks. ABC had an absolute and unconditional right to the immediate possession of the Masks.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

66. On information and belief, Zhang instructed the shipper to retake custody of the Masks based on the false representations that the Masks were delivered to the wrong party and then that the Masks were defective. Retaking custody of the Masks through false representations was unauthorized and unlawful.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

67. On information and belief, Zhang, without authorization from ABC, wrongfully assumed control of ABC's property and wrongfully deprived ABC possession of its property.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

68. ABC contacted Zhang and demanded immediate return of the Masks.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

69.     Zhang admitted he had retaken possession of the Masks, but falsely claimed that the Masks were defective and refused to return the Masks.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

70.     Upon information and belief, Zhang sold the Masks to a different company at a higher price.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

### COUNT V—FRAUD AGAINST YONG ZHANG
### (PLED IN THE ALTERNATIVE)

71.     Plaintiff incorporates paragraphs 1-28, 30-32 as if pled in this Count. GD Medical has asserted that Zhang was not employed by or acting on behalf of GD Medical. Accordingly, Count V is pled in the alternative to Counts I and II, if it is determined that Zhang was not acting as agent for GD Medical in the transaction at issue.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

72.     If Zhang did not have authority to act as an agent for GD Medical as GD Medical claims, then Zhang intentionally misrepresented to Ni that he (i) had such authority, and (ii) GD Medical would supply the Masks to ABC, in order to induce ABC to enter the Agreement with Zhang.

ANSWER: GD Medical makes no answer to this paragraph of the Amended

Complaint since this Count is not directed to it.

73.     Ni relied on Zhang's representation that he was acting on behalf of GD Medical and that GD Medical would supply Masks to ABC in entering Agreement at issue in this case.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

74.     Furthermore, Ni relied on Zhang's representations that he was acting on behalf of GD Medical and that GD Medical would supply Masks to ABC in entering theFujian Contract.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

75.     Zhang knew, or reasonably should have known, that he did not have authority to act on behalf of GD Medical and that he would not be able to supply Masks to ABC through GD Medical, or anyone else.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

76.     Zhang misrepresented to ABC his relation to GD Medical and his abilityto supply Masks to ABC to induce ABC to wire $96,930.00 to GD Medical's bank account at Zhang's instruction.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint since this Count is not directed to it.

77.     ABC wired the funds to GD Medical's bank account.

ANSWER: GD Medical makes no answer to this paragraph of the Amended Complaint

since this Count is not directed to it.

78.     Zhang either did not deliver the Masks or retrieved the Masks that he instructed

be delivered to ABC.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint

since this Count is not directed to it.

79.     ABC suffered damage, in the form of lost profits, because it could not supply the

Masks to Fujian.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint

since this Count is not directed to it.

80.     In addition, ABC suffered damage because Fujian canceled its master contract

with ABC because of ABC's failure to deliver the initial shipment of Masks.

ANSWER:  GD Medical makes no answer to this paragraph of the Amended Complaint

since this Count is not directed to it.

## **PRAYER FOR RELIEF**

Plaintiff ABC International Inc., respectfully prays that this Honorable Courtgrant

the following relief:

A.     Against Defendant GD Medical:
    i.     Lost profit in the amount of $215,400.00 and prejudgment interest;
    ii.    Incidental and consequential damages pursuant to 810 Ill. Comp.Stat.
           Ann. 5/2-715;
    iii.   Disgorgement of any profits it made from the sale of the Masks to
           another party; and
    iv.    Such other and further relief to Plaintiff as is just and equitable.
B.     Against Defendant Yong Zhang:
    i.     Lost profit in the amount of $215,400.00 and prejudgment interest;
    ii.    Incidental and consequential damages pursuant to 810 Ill. Comp.Stat.
           Ann. 5/2-715;
    iii.   Disgorgement of any profits it made from the sale of the Masks to
           another party; and
    iv.     Punitive damages for fraud; and

v.      Such other and further relief to Plaintiff as is just and equitable.

ANSWER:  GD Medical denies ABC is entitled to any relief whatsoever.

### **AFFIRMATIVE MATTER**

GD Medical states the following affirmative matters in response to the Amended Complaint, all pled in the alternative of one another and of GD Medical's above answers to the allegations of the Amended Complaint and GD Medical's Counterclaims, but GD Medical does not thereby admit or assert that GD Medical bears the burden of proof on the following if in fact the law does not impose such burden on GD Medical:

1.      The alleged contract between ABC and either Zhang or GD Medical, even if formed and binding in the first instance, is void because it had an illegal objective: namely, to generate a profit for ABC by Ni and ABC offering or giving money or similar items of value to a Chinese official for the purpose of influencing him or her to act or make decisions in his or her official capacity in order to assist ABC in obtaining a contract to provide masks to a company in China, corruptly using wireless communications devices or other instrumentalities of interstate commerce to that end, in violation of the U.S. Foreign Corrupt Practices Act, at 15 U.S.C. § 78dd-2(a), and the anti-bribery provisions of the Money Laundering Control Act ("MLCA"), at 18 U.S.C. § 1956.  Moreover, cooperating with Ni's and ABC's scheme by supplying masks for Ni's stated purpose would have subjected Zhang and GD Medical to jeopardy under the federal aider and abettor statute, at 18 U.S.C. § 2, among other laws.

2.      The alleged contract, if found to have been formed and binding in the first instance, was voidable/rescindable and voided/rescinded by GD Medical, due to material anticipatory and/or actual material breach by ABC of at least two essential contract terms: namely, (i) Ni's and ABC's express promise to provide masks from Zhang to Chinese residents

19

on a charitable basis, rather than use them to turn a profit, in exchange for which ABC would be charged the same price Zhang and/or GD Medical would pay for the masks, Zhang and GD Medical thereby forgoing any profit themselves in light of the charitable purpose of the procurement; and (ii) the implied promise that the provision of masks was not part of an illegal scheme to make an unlawful facilitating payment to a Chinese official.  The Amended Complaint admits breach of the charitable giving promise, and Ni admitted to Zhang breach of the charitable giving promise, and facilitating payments which on information and belief breached the legal compliance promise, directly leading to the rescission.

3.      The alleged contract, if found to have been formed and binding in the first instance, was voidable and voided by GD Medical because GD Medical was induced to enter into it by means of a fraudulent misrepresentation by Mr. Ni and ABC as to the purposes to which the masks would be used: namely, the charitable, no-profit distribution of the masks in China as set forth in Affirmative Matter ¶ 2, above.

4.      ABC is not entitled to a remedy because it failed to take reasonable measures to mitigate its alleged damages, not having sought by legal means to acquire possession of the masks of which it alleges it was deprived, and not having promptly sought masks from sources other than Zhang or GD Medical in order to satisfy its alleged contract with Fujian, all within a reasonable timeframe.  Further, on information and belief, ABC already had masks of its own at the warehouse in California to draw on for its alleged contract with Fujian, but failed to do so.

5.      ABC unreasonably delayed asserting its alleged claims, as a result of which GD Medical, relying upon ABC's lack of action, was unfairly prejudiced by the deprivation of any opportunity to respond by seeking a means to satisfy any duty that might be asserted against it for finding and supplying masks to ABC in time for delivery to Fujian as now alleged by ABC;

as a result, ABC is guilty of *laches* and barred from asserting its claims now.

6.     Due to the unanticipated extent of the marketplace shortage or unavailability of masks, performance of the alleged contract between ABC and GD Medical would have been impossible or commercially impracticable, excusing such performance.

7.     ABC, and Zhang and/or GD Medical, mutually rescinded the alleged contract between ABC and either Zhang or GD Medical, if found to have been formed and binding in the first instance, as shown by Ni's and ABC's provision of wire instructions for refunding ABC's monetary deposit which were essential to such a refund and could not be attributable to any other purpose, and ABC's failure to make any written or oral demand for masks after they were allegedly delivered but then recovered by Zhang or GD Medical and before ABC filed this lawsuit.

8.     If and to the extent Zhang is found to have been an agent of GD Medical, and GD Medical is found to have entered into a contract with ABC through Zhang as its agent, then Zhang and/or GD Medical rescinded the contract, as they had a right to do unilaterally, due to Ni's and ABC's fraudulent misrepresentation that they were acquiring the masks for charitable distribution within China during a pandemic, rather than to turn a profit.  Ni's misrepresentation was the only reason Zhang and/or GD Medical agreed to charge ABC a price which yielded no profit to themselves.  Upon learning of the fraud, and of Ni's and ABC's intention to make improper influence payments to a Chinese official to obtain a profitable resale contract, Zhang and/or GD Medical rescinded the alleged contract with Ni, provided restitution to ABC of the full purchase price, and provided no masks to ABC, thereby restoring the parties to their *status quo* positions.

9.     ABC, Zhang, and GD Medical reached an accord and satisfaction of all claims

relating to the masks on ABC's part, the terms of which were a return of ABC's monetary deposit – achieved and achievable only through the use of wire instructions given to Zhang solely for that purpose – in exchange for cancellation of any mask order which ABC alleges it placed in its Amended Complaint.

10.     ABC had no enforceable contract for resale of masks to Fujian, and hence suffered no damages from the alleged breach of contract by Zhang and/or GD Medical, since the alleged resale contract was never signed, and the alleged resale buyer never provided any payment.

11.     ABC is estopped from asserting breach of contract against Zhang and GD Medical since Zhang and GD Medical reasonably relied upon ABC's request for, receipt of, and retention of the admitted refund of its monetary deposit, coupled with ABC's failure to subsequently demand the turnover of masks at the time ABC alleges they were back in Zhang's or GD Medical's possession and ABC's alleged resale contract could still have been satisfied by a return of the alleged masks, as confirmation that ABC no longer wanted or insisted upon receipt of the masks, instead being content with the refund of its money, which ABC actively facilitated in a way only it could – by providing wire instructions back to its bank account.

12.     The Amended Complaint cannot state a cause of action against GD Medical for breach of contract since it admits ABC failed to perform the most fundamental condition on its part under the alleged contract: namely, ABC did not pay the purchase price, having requested, facilitated, and received a full refund of the entire purchase price for the alleged masks, without reserving any rights to the masks, at a time when it could still have instead satisfied its alleged resale contract with Fujian by paying for the alleged masks and taking measures to recover them. The refund cannot be deemed mere acceptance of partial damages, since payment was withdrawn

at least five (5) days before ABC alleges the time for delivery to Fujian under the alleged resale contract had expired, and ABC had thus already abandoned the purchase, and was not entitled to the masks, before the time it alleges it was damaged.

13. ABC's breach of contract claim against GD Medical also fails because if there was a contract at all, ABC breached that term of the alleged contract comprised of its promise to charitably give the masks it sought to residents of China suffering from the COVID-19 pandemic. Consequently, ABC did not perform all conditions on its part.

14. ABC's breach of contract claim against GD Medical also fails because if there was a contract at all, compliance with the law was an implied term of every contract, and on information and belief, ABC failed to perform that condition on its part by using the alleged contract as part of a scheme to violate the Foreign Corrupt Practices Act, at 15 U.S.C. § 78dd-2(a) and the anti-bribery provisions of the Money Laundering Control Act ("MLCA"), at 18 U.S.C. § 1956, by offering or making an illegal payment to a Chinese official to facilitate business.

15. The Amended Complaint cannot state a cause of action against GD Medical for conversion since it does not allege (and ABC cannot show) that the alleged masks were ever in GD Medical's possession or control, or that ABC ever had an unconditional right to possession of the masks on its part (since in fact it had taken back the full purchase price it was required to pay in exchange for masks), or that it ever made a pre-suit demand upon GD Medical for turnover of the masks after GD Medical allegedly recovered them from ABC's agent.

16. The *Moorman* Doctrine bars ABC's conversion claim against GD Medical since ABC's Amended Complaint seeks purely economic damages, conversion is a tort, the personal property (masks) allegedly converted are alleged to have been the subject of a contract under

which ABC and GD Medical were in privity with one another, and the *Moorman* Doctrine under Illinois law bars tort actions seeking purely economic damages against parties in contractual privity with the plaintiff.

17.     Zhang told Ni that the masks he would seek for Ni's project would have to come from China, since masks were hard to find in the U.S., China was the final destination for the masks in any event, and the inclusion of shipping costs, either from or through the United States, would add substantially and unnecessarily to the cost of masks.  Consequently, it would be absurd to believe, as alleged in the Amended Complaint, that Zhang or GD Medical caused masks to be delivered in California for shipment to what ABC admits was a location in China, even if that location was a company in Fujian (as alleged) instead of a charitable distribution point.

18.     Since the alleged contract with ABC did not specify a time for delivery of the masks allegedly owed to it, and Ni never communicated to Zhang or GD Medical a delivery deadline, GD Medical was entitled to a reasonable time for such delivery under the Illinois Uniform Commercial Code, if and to the extent the Court finds there was a contract at all, and shipping from the U.S. by  February 12, 2020, for a contract allegedly made on February 3, 2020, was not a reasonable time given the high demand but supply shortages for masks and transportation challenges at that point in the global COVID-19 pandemic.

19.     All other affirmative defenses and matters which may become apparent during the discovery period in this suit or prior to trial are reserved.

## COUNTERCLAIMS

GD GROUP USA COMPANY, doing business as GD MEDICAL INC., an Illinois corporation, complains of ABC INTERNATIONAL, INC. ("ABC"), an Ohio corporation, and

EDDIE NI ("Ni"), individually, as follows, with all Counts pled in the alternative of one another and of GD Medical's Answers to the Amended Complaint and Affirmative Matter above:

## Jurisdiction and Venue

1.      The Court has asserted jurisdiction for ABC's claims in its Amended Complaint based upon the allegations thereof (at ¶¶ 1 thru 4) indicating diversity of citizenship and an amount in controversy exceeding the threshold under 28 U.S.C. § 1332(a).

2.      Taking as true said ¶¶ 1 thru 4 of the Amended Complaint, the Court has jurisdiction over the following Counterclaims against ABC under FRCP 13(a)(1)(A) and (b), since they arise out of the transaction or occurrence that is the subject matter of ABC's Amended Complaint.

3.      Concurrently with the filing herewith, GD Medical has filed a motion under FRCP 20(a)(2) for leave to add ABC's President, Eddie Ni, as a Counter-Defendant for claims based upon his alleged individual tortious and other conduct arising out of the same series of transactions or occurrences that are the subject matter of ABC's Amended Complaint, such that questions of both law and fact arise common to GD Medical's claims against both Counter-Defendants – including, whether Ni fraudulently misrepresented the existence of charitable intentions in order to induce Zhang and/or GD Medical to procure and sell masks to ABC at Zhang's or GD Medical's own cost, rather than the much higher fair market value at which Ni later claimed he was re-selling the masks to a third party.  The Court has jurisdiction for the Counterclaim against Mr. Ni under FRCP 13(a)(1)(B), since he is domiciled in the State of Ohio, and GD Medical is a citizen of Illinois.

## Count I – Fraudulent Misrepresentation (Ni)

4.      GD Medical incorporates by this reference ¶¶ 1 thru 3, above.

5.     If and to the extent GD Medical is found under ABC's Amended Complaint in this lawsuit to have entered into a contract with ABC, then GD Medical entered into such agreement only due to Zhang's and GD Medical's reasonable reliance upon fraudulent misrepresentations by Eddie Ni ("Ni").

6.     Specifically, on or about February 2, 2020, Ni represented to Zhang that ABC sought to purchase masks from or through Zhang for the purpose of donating them charitably to residents of the People's Republic of China.  To that end, and to persuade Zhang and GD Medical of the aforementioned intent, Ni transmitted to Zhang news coverage of Ni's supposed prior charitable giving of masks to Chinese residents, attached as **Exh. 1** hereto (rough English translation attached as **Exh. 2**).[1]

7.     At the time he made that representation, Ni knew it was false, since he secretly intended to resell the masks for a profit to a downstream buyer at a profit more than twice what he was paying to Zhang and allegedly to GD Medical.

8.     In addition, Ni omitted to tell Zhang or GD Medical that Ni had offered or intended to make unlawful payments to a Chinese official to facilitate the downstream distribution of masks Zhang might procure, which was an omission of a material fact since Ni's express representation that such downstream distribution would occur (whether charitably or otherwise) implied that such distribution would and could be achieved lawfully.

9.     If and to the extent a contract is found by the Court to exist between ABC and GD Medical as alleged in the Amended Complaint, it resulted because Zhang and GD Medical reasonably relied upon Ni's misrepresentation about charitable giving, and his omission of his

---

[1] While Exhs. 1 and 2 are attached to show the content of what Ni sent to Zhang, GD Medical lacks knowledge or information sufficient to determine whether such content is true, and therefore does not allege that such content is necessarily accurate.

offer or intention to make unlawful payments to a Chinese official, by Zhang researching mask availability and cost and attempting to arrange to purchase masks for resale to ABC, which would involve charging ABC a price which generated no profit for either Zhang or GD Medical but was merely a pass-through of what they would have to pay to their own suppliers (which Zhang and GD Medical would not have done or agreed to but for their belief that, as represented by Ni, ABC was going to charitably donate the masks in China, and do so lawfully).

10.     If and to the extent GD Medical is found to have entered into a contract with ABC, then GD Medical suffered damages as a direct and proximate result of Ni's misrepresentations by (i) rendering himself contractually obligated to ABC, (ii) foregoing the profit which he otherwise would have made by procuring and selling the masks to ABC at their fair market value, which according to ABC was more than three times what Zhang or GD Medical allegedly charged ABC (i.e., $312,330.00 versus Zhang's and/or GD Medical's cost of $96,930.00), (iii) potentially incurring monetary liabilities and other consequences due to Ni's offer or making of unlawful payments to a Chinese official, and (iv) incurring substantial attorneys' fees to defend himself against ABC's breach of contract and tort claims in this lawsuit.

WHEREFORE, GD Medical requests entry of a judgment for damages against Ni in the sum of at least $215,400.00, plus his attorneys' fees incurred to defend against ABC's breach of contract and tort claims, indemnity for any liabilities incurred in relation to Ni's offer or making of unlawful payments to a Chinese official, attorneys' fees incurred to defend against breach of contract and tort claims brought by ABC, any sums found owed to ABC by GD Medical, punitive damages to be determined at trial, costs of suit, and such other relief as is just.

## Count II – Fraudulent Misrepresentation (ABC)

11.     GD Medical incorporates by this reference ¶¶ 1 thru 10 of these Counterclaims,

above.

12.     At all relevant times, in making the aforesaid misrepresentations and omissions, Ni was acting not only on behalf of himself individually, but also on behalf of ABC as its President, owner, and agent.

WHEREFORE, GD Medical requests entry of a judgment for damages against ABC in the sum of at least $215,400.00, plus indemnity for any liabilities and other consequences incurred in relation to Ni's offer or making of unlawful payments to a Chinese official, attorneys' fees incurred to defend against breach of contract and tort claims brought by ABC, any sums found owed to ABC by GD Medical, punitive damages to be determined at trial, costs of suit, and such other relief as is just.

## Count III – Breach of Contract (ABC)

13.     GD Medical incorporates by this reference ¶¶ 1 thru 3 of these Counterclaims, above.

14.     On or about February 2, 2020, Ni, as ABC's President, owner, and agent, promised Zhang that if Zhang used his resources in an effort to obtain surgical masks during the COVID-19 pandemic for a certain project, the masks he might be able to procure for that project would be distributed on a charitable basis to the Chinese people for their health and safety.

15.     In addition to expressly promising to charitably distribute such masks, Ni, as agent for ABC, also impliedly promised that ABC would comply with applicable law in connection with its dealings regarding any such masks.

16.     If and to the extent GD Medical is found to have entered into a contract with ABC, then Ni's express promise, as ABC's agent, to charitably distribute masks for the project to the Chinese people during the pandemic, and his implied promise, also as ABC's agent, to

refrain from offering or making unlawful payments to a Chinese official, were material terms of such contract.

17. ABC materially (i) breached and/or (ii) anticipatorily breached the charitable giving term when it allegedly contracted with Fujian to resell for profit the masks Ni requested per the above, and the implied legal compliance term when Ni or ABC, on information and belief, offered or made unlawful payments to a Chinese official to facilitate business.

18. The value to GD Medical of the charitable giving clause was the fair market value of the goods the intended beneficiaries of that largesse were to enjoy, which ABC, in its Amended Complaint, has set at $312,330.00.

19. Thus, GD Medical suffered damages in the sum of at least $312,330.00 as a result of ABC's anticipatory breach of the charitable giving term, plus any monetary liabilities and other consequences it might be subjected to as a result of Ni's or ABC's unlawfully offering or making payments to a Chinese official.

20. GD Medical at all times stood ready, willing, and able to perform any contractual duty it is found to have had, but for the anticipatory breach by ABC.

WHEREFORE, GD Medical requests entry of a judgment for damages against ABC in the sum of at least $312,330.00, plus indemnity for any liabilities incurred in relation to any offer or making by Ni of unlawful payments to a Chinese official, costs of suit, and such other relief as is just.

## Count IV – Breach of Contract (Ni)

21. GD Medical incorporates by this reference ¶¶ 1 thru 3 of these Counterclaims, above.

22. On or about February 2, 2020, Ni promised Zhang that if Zhang used his

resources in an effort to obtain masks during the COVID-19 pandemic for a certain project, the masks he might be able to procure for that project would be distributed on a charitable basis to the Chinese people for their health and safety.

23.     In addition to expressly promising to charitably distribute such masks, Ni also impliedly promised that ABC would comply with applicable law in connection with its dealings regarding any such masks.

24.     In return for the above promises, Zhang invested time researching mask availability and cost and attempting to arrange the procurement of masks for ABC at no profit to Zhang or GD Medical, on the above terms promised by Ni.

25.     The charitable giving and legal compliance promises were material terms of the agreement ABC alleges was formed between Ni and Zhang or GD Medical.

26.     Ni materially (i) breached and/or (ii) anticipatorily breached the charitable giving term when he caused the company he owned, ABC, allegedly to contract with Fujian to resell for profit the masks Ni requested per the above, and the implied legal compliance term when, on information and belief, he or ABC offered or made an unlawful payment to a Chinese official.

27.     The value to GD Medical of the charitable giving clause was the fair market value of the goods the intended beneficiaries of that largesse were to enjoy, which ABC, in its Amended Complaint, has set at $312,330.00.

28.     Thus, GD Medical suffered damages in the sum of at least $312,330.00 as a result of Ni's anticipatory breach of the charitable giving term of his alleged agreement with Zhang or GD Medical, plus the monetary amount and other consequences of any liabilities incurred in relation to any offer or making by Ni or ABC of an unlawful payment to a Chinese official, and attorneys' fees incurred to defend against breach of contract and tort claims brought by ABC.

29.     If any agreement was formed between ABC and GD Medical, GD Medical performed all conditions on its part under any such agreement by way of Zhang researching and locating possible sources for masks, which he might have delivered but for the breach and/or anticipatory breach by Ni, which caused him to cease his efforts.

WHEREFORE, GD Medical requests entry of a judgment for damages against Ni in the sum of at least $312,330.00, plus indemnity for any liabilities and other consequences incurred in relation to Ni's offer or making of unlawful payments to a Chinese official, attorneys' fees incurred to defend against breach of contract and tort claims brought by ABC, costs of suit, and such other relief as is just.

## Count V – Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Ni)

30.     GD Medical incorporates by this reference ¶¶ 1 thru 10 of these Counterclaims, above.

31.     The Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFDPA"), at 815 ILCS 505/2, states,

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

32.     Meanwhile, Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"), at 815 ILCS 510/2, incorporated by reference in the above-quoted provisions of the ICFDPA as additional types of violations thereof, states in part,

"(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

\* \* \*

(9)  advertises goods or services with intent not to sell them as advertised;

\* \* \*

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

33.     Regarding remedies, the ICFDPA further states, at 815 ILCS 505/10a,

"(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper; … ."

34.     Ni and GD Medical were both "persons" within the meaning of the ICFDPA, pursuant to 815 ILCS 505/1(c).

35.     Ni's false statement that he would distribute the masks from Zhang charitably rather than sell them for profit, and his failure to disclose his offer or intention, on information and belief,  to make unlawful payments as a means to that end until after GD Medical allegedly contracted with ABC to provide such masks, comprised the employment of a deception, fraud, false pretense, false promise, or misrepresentation (collectively "deception"), or the concealment, suppression or omission of a material fact ("concealment"), in the conduct of trade or commerce for Ni personally and/or ABC, with intent that Zhang and GD Medical rely upon the deception and concealment by agreeing to provide masks to ABC without any profit for Zhang or GD Medical.

36.     Further, Ni's false statement and omission cited in the preceding paragraph also

comprised violations of the UDTPA provisions cited above, in that he advertised to Zhang an intent to resell masks, if Zhang provided them, in the form of a charitable donation while really intending to resell them in a different fashion (i.e., for a more than 200% profit), made false or misleading statements concerning the existence of price reductions (to zero, as a charitable donation) when he had already determined to do otherwise, and similarly created a likelihood of confusion or misunderstanding for Zhang and GD Medical.

37. Although actual reliance by Zhang or GD Medical is not necessary to state a claim under the ICFDPA, Zhang and GD Medical did, in fact, reasonably rely to their detriment on Ni's deception and concealment set forth above, if any agreement for masks is found to have existed between ABC and GD Medical, by Zhang engaging in efforts to satisfy Ni's request for masks, and by creating a contract with ABC to provide masks at no profit and at the risk of liability for any scheme involving unlawful payments to an official.

38. If and to the extent GD Medical is found to have actually entered into a contract with ABC, GD Medical suffered damages as a direct and proximate result of Ni's deception and concealment, comprised of (A) Zhang's investment of time researching and trying to arrange for the procurement of masks for Ni and ABC; (B) damages comprised of (i) GD Medical rendering itself contractually obligated to ABC, (ii) foregoing the profit which it otherwise would have made by procuring and selling the masks to ABC at their fair market value, which according to ABC was more than three times what Zhang or GD Medical allegedly charged ABC (i.e., $312,330.00 versus Zhang's and/or GD Medical's cost of $96,930.00), and (iii) subjecting itself to the risk of liability for any scheme involving unlawful payments to an official; and (C) incurring substantial attorneys' fees to defend itself against ABC's claims.

WHEREFORE, GD Medical requests entry of a judgment for damages against Ni in the

sum of at least $312,330.00, plus indemnity for any liabilities and other consequences incurred in relation to any offer or making by Ni or ABC of an unlawful payment to a Chinese official, attorneys' fees incurred to defend against breach of contract and tort claims brought by ABC, costs of suit, and such other relief as is just.

## Count VI – Violation of Illinois Consumer Fraud and Deceptive Trade Practices Act (ABC)

39.　　GD Medical incorporates by this reference ¶¶ 1 thru 10 of these Counterclaims, above.

40.　　At all relevant times, in making the aforesaid misrepresentations and omissions, Ni was acting not only on behalf of himself individually, but also on behalf of ABC as its President, owner, and agent.

WHEREFORE, GD Medical requests entry of a judgment for damages against ABC in the sum of at least $312,330.00, plus indemnity for any liabilities and other consequences incurred in relation to Ni's offer or making of unlawful payments to a Chinese official, attorneys' fees incurred to defend against breach of contract and tort claims brought by ABC, costs of suit, and such other relief as is just.

GD MEDICAL DEMANDS TRIAL BY 12-PERSON JURY ON ALL MATTERS IN THIS LAWSUIT.

November 1, 2021

Gregg Minkow
Minkow & Bergman, Ltd.
211 W. Wacker Drive, Suite 500
Chicago, IL 60606
Phone: (847) 489-6999
Fax: (847) 753-9974
gminkow@minkowbergman.com
Atty ID 6181058

GD GROUP USA COMPANY, doing
business and sued as GD MEDICAL INC.,
Defendant/ Counter-Plaintiff

By: _____/s/Gregg I. Minkow_____
　　　　　　Its Attorney

# EXHIBIT 1

# 美国华侨郑时垣、倪举凌在芝加哥发起抗疫情募捐活动



**海外华人** 华人号

20-02-02 00:54 阅读量:4.6万+

关注

▶ 00:00
播新闻



| 新闻 | 我的 |
|---|---|

回复

复制

举报

取消

丰集团和全球友谊

情募捐活动。

，牵动着无数海外

籍侨社侨胞积极为

击疫情贡献爱心。

委统战部协调，向

和医疗防护物资。

是由芝加哥美国福

https://www.52hrtt.com/mobileview/info?id=G15804144202168&…=6&languageId=1&from=singlemessage&isappinstalled=0&flag=1

长，全球友谊基金会、美国联丰集团倪举凌董事长联合发起。经中国驻芝加哥总领事馆策划，琯头拱屿乡亲联谊会、美国福州拱屿总商会共同支持，积极筹集防疫抗疫物资，募集善款，至今已有百家企业及个人参与其中。1月29日，第一批1.5万个口罩（价值十万人民币）已发出；第二批数万个口罩预计将于2月份左右发出；第三批物资和订单正在全力准备中，所有捐赠将陆续运送中国。

一方有难，八方支援。爱国华侨郑时垣、倪举凌在美国芝加哥发起的抗疫情募捐活动引起广泛关注，在此也向广大同样心系中国的华侨呼吁：积极募捐，爱心奉献、凝侨心、汇侨力，与祖国和家乡共渡难关。捐赠物资将帮助灾区所有一线医务工作者及患者！同时，美国福建商业联合总会、全球友谊基金会、美国联丰集团庄严承诺：所有捐款将全部统一采购医疗防护物资，并与所有捐赠的医疗物资一并及时发送到祖国的疫情灾区。



图为福建商会会长郑时垣做发货以前的最后检查

**美国** 北京时间：截至12月16日22时28分

1477253**58**28103 **285550** 8658882
累计确诊　　现有确诊　　累计死亡　　累计治愈
昨日+237339　昨日+137163　　昨日+2721　　昨日+97455

**点击查看美国疫情新增趋势** 〉

免责声明

1、本站（网址：52hrtt.com）为用户提供信息存储空间等服务，用户保证对发布的内容享有著作权或已取得合法授权，不会侵犯任何第三方的合法权益。
2、刊载的文章由平台用户所有权归属原作者，不代表同意原文章作者的观点和立场。
3、因平台信息海量，无法杜绝所有侵权行为，如有侵权烦请联系我们（福建可比信息科技有限公司 邮箱：hrtt@52hrtt.com），以便及时删除。

## 延伸阅读

### 新·生活｜流浪大爷手绘钞票买面吃　暖心店主8年来从未



新·生活　　　　　　　　　　今天 09:13

### 新·教育｜国大对每一个证实违规行为都施以纪律处分



新·教育　　　　　　　　　　今天 09:12

### 新·社会｜客工宿舍冠病感染率达47%　新加坡如何一步

# EXHIBIT 2

## Chinese Expatriates in America Shihuan Zheng and Eddie Ni Started Fundraising Activity to Fight Against the Pandemic

By: Overseas Chinese                    Account Name: Chinese                    Follow us

02/02/2020  00:54                    46,000+ reads

News Broadcast

# Go Wuhan Go!

[text cut-off] Wind Fall Group and Global Friendship [text cut-off] fund-raising activity.

[text cut-off] making numerous overseas [text cut-off] overseas Chinese organizations and Chinese expatriates making active contributions in the effort to fight the pandemic to show their love. [text cut-off] coordinated by the Department of the United Front [text cut-off] medical and preventive materials to [text cut-off] by Chicago Fujian, U.S. [text cut-off] organized by the Global Friendship Foundation and Eddie Ni, Chairman of the Board of U.S. Windfall Group. The activity was planned by the Chinese Consulate General in Chicago with support from the Guantou Gongyu Countrymen Association and U.S. Fuzhou Gongyu General Chamber of Commerce to actively raise funds as well as anti-pandemic materials. So far there are one hundred enterprises and individuals participating in this effort. On January 29th, the first batch of 15,000 face masks (valued at 100,000 Renminbi) was shipped; the second batch of several dozens of thousands of masks are expected to be shipped in or around February; the third batch of materials and its order is being prepared. All the donations will be shipped to China in batches.

When one party is in a disaster it needs support from all sides. The anti-pandemic fundraising activity started by patriotic expatriates Shihuan Zheng and Eddie Ni in Chicago has caught widespread attention. We appeal to the Chinese expatriates who share similar concerns over the situation in China: make active contributions and donations, show your love, put your effort together and pool your resources together so as to tide over the difficulties with our motherland and hometowns. The donated materials shall lend help to all the front-line medical personnel as well as patients in the disaster areas. Meanwhile, U.S. Fujian Alliance of Chambers of Commerce, Global Friendship Foundation, and U.S. Windfall Group solemnly promise: all donated funds will be used to purchase medical and preventive materials in a unified effort. These materials, together with the donated medical supplies shall be shipped in a timely manner to the pandemic areas of our motherland.

[Photo]

[Photo caption:  Shihuan Zheng, President of Fujian Chamber of Commerce, conducting a final inspection before the shipment is sent.]

U.S. / Beijing time as of December 26th:  10:28 PM

Cumulative confirmed positive cases: 14,772,535          yesterday: +237,339

Current confirmed positive cases: 5,828,103          yesterday: +137,163

Cumulative deaths: 285,550          yesterday: +2,721

Cumulative cured cases: 8,658,882          yesterday: +97,455

Disclaimer:

1. This website (website: 52hrtt.com) provides services such as information storage space for our customers. Users guarantee that they own the copyright of or have obtained lawful authorization for the published content and shall not infringe upon the lawful rights of any third party.

2. The rights of ownership of published articles is reverted to their original author by the users of this platform, which does not imply that this platform agrees with the original author on his/her views and position.

3. Due to large volumes of information on this platform we cannot realistically prevent all acts of infringement. If you find any infringements, please contact us (Fujian Kebi Information Technology Inc.; email: hrtt@52hrtt.com) so that we can delete it in a timely manner.

Extended Reading:

[headlines of other news]